UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| JAMES HOOK | : |
| Plaintiff, | : |
| v. | : Civil No. 8:09-cv-1630 RWT |
| PRINCE GEORGE'S COUNTY, MARYLAND OFFICE OF HOMELAND SECURITY | : |
| Defendant. | : |

AMENDED **COMPLAINT**

Plaintiff, James Hook ("Plaintiff"), brings this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the Prince George's County Human Relations Commission Act, Prince George's County Code, § 2-185, et seq. ("HRCA"), and the Maryland Code, Art. 49B, § 16, to redress deprivations of rights secured by federal, state, and Prince George's County law which prohibit discrimination against employees because of disabilities, and which prohibit retaliation for opposition to such discrimination.

**JURISDICTION**

1.  The jurisdiction of the court over this controversy is invoked under the provisions of 42 U.S.C. §§12101 et seq., 28 U.S.C. §1343(a)(4), and 28 U.S.C. 1367.

**VENUE**

2.  The unlawful employment practices alleged below were committed within the State of Maryland, and within Prince George's County, MD. Accordingly, venue lies in

the United States District Court for the District of Maryland under 28 U.S.C. §1391(b).

## THE PARTIES

3. Plaintiff is a forty-two year old male citizen of the United States of America, the State of Maryland, and the Prince George's County, MD.  Plaintiff is a "qualified individual with a disability" as provided at 42 U.S.C. §12102(2) of the ADA, and Art. 49B, § 15(g) of the Maryland Code, and is a person with a "physical or mental handicap" as that term is defined in § 2-186(a)(14.1) of the HRCA.   In addition, or in the alternative Plaintiff was regarded as, and had a record of, having a disability as defined at 42 U.S.C. §12102(2) of the ADA, and Art. 49B, § 15(g) of the Maryland Code, and was, or in the alternative was regarded as, and had a record of being a person with a "physical or mental handicap" as defined in § 2-186(a)(14.1) of the HRCA.

4. The Office of Homeland Security of Defendant Prince George's County ("Defendant" or "the County") is an agency of local government chartered under the authority of the Constitution and the laws of the State of Maryland.  Defendant is an "employer" as that term is defined in the ADA, 42 U.S.C. §12111(5)(A), and in Art. 49B, §15(b) of the Maryland Code, and in the HRCA, §2-186(5).

## ADMINISTRATIVE EXHAUSTION

5. On July 31, 2008, four months after he was terminated by his employer, the Office of Homeland Security of Prince George's County, Plaintiff filed a formal administrative Complaint of Discrimination at the Prince George's Human Relations Commission, HRC Charge No. JV08-0707, which was cross filed at the U.S. E.E.O.C., Charge No. 12H-2008-00109.  One hundred eighty (180) days have passed since Plaintiff filed his formal administrative Complaint of Discrimination, and Plaintiff has complied

2

with the statutory prerequisites for maintaining this civil action as set forth in 42 U.S.C. § 2000e(5)(f)(1), Maryland Code Art. 49B, §11B, and the HRCA.  A Notice of Rights was issued by the U.S. E.E.O.C. on or about June 8, 2009.

## FACTS

6. Plaintiff, employed by Prince George's County Office of Homeland Security ("the County") from May 20, 1990 through March 28, 2008, performed the job functions of an Emergency Dispatcher during almost all of his tenure.  Plaintiff was an Emergency Dispatcher II until 1999, when he became a supervisor of dispatch personnel and was then classified as Emergency Dispatcher IV.

7. During his last year on the job at the County, Plaintiff was classified by the County as a Communications Specialist.  The position of Communications Specialist is not a sedentary job.  Even while Plaintiff was classified as a Communications Specialist, he generally continued to perform his usual job functions as an Emergency Dispatcher IV.

8. Plaintiff has about eighteen years of experience as an Emergency Dispatcher, receiving 911 calls from citizens and agencies, dispatching police or fire responders, and coding the incident into the computer system.

9. A childhood injury, sustained in 1970, left Plaintiff monocular, with sight in his right eye and only limited sight in his left eye.  Since suffering life-threatening pneumonia in 2007, Plaintiff has been entirely monocular, seeing only with his right eye, with no sight in his left eye.

10. Plaintiff's monocular vision was never an impediment on the job, and he was always able to perform his job functions without accommodation.  Plaintiff's vision

with glasses is and always has been 20/40. Uncorrected, his sight in his right eye is 20/80.

11. The County has long employed another Emergency Dispatcher who is also monocular, with no problems from the condition.

12. The position of Emergency Dispatcher is described in the county's position description, and is a sedentary position.

13. Plaintiff's performance as an Emergency Dispatcher was always satisfactory, and he assumed the role of dispatch personnel supervisor from 1999.

14. In February, 1999, Plaintiff was diagnosed with Type 2 diabetes, which renders the body unable to either produce or use adequate supplies of insulin, which is critical to proper functioning of the endocrine system. Plaintiff was then insulin-dependent, requiring two injections of insulin per day. He was also unable to eat in a normal fashion, and was required to follow a strict dietary regime of six small meals daily, followed by a blood test an hour after each meal.

15. On February 12, 2007, Plaintiff was hospitalized for four months with pneumonia, complicated by diabetes. Plaintiff was gravely ill, lost sight in both eyes for a period, and remained in intensive care for about four months.

16. As required, Plaintiff submitted monthly medical reports to his employer during this period. The reports described Plaintiff's serious medical condition.

17. Released from the hospital in about mid-June, 2007, Plaintiff gradually recuperated over seven additional months which he spent at home, on leave from work.

18.  By September, 2007, Plaintiff was cleared for surgery on his right eye. The surgery was entirely successful, and the sight in his right eye was restored to its previous state, 20/40 corrected vision.

19.  By mid-October, 2007, Plaintiff still experienced some weakness, fatigue, and shortness of breath, but he wanted to return to work and was cleared for light duty by his physician.

20.  In about October or November, 2007, the County stated there was no light duty available for Plaintiff.

21.  In January, 2008, Plaintiff was physically able to resume a regular work load, and he asked to be allowed to return to work. Plaintiff's supervisor, Director of Homeland Security, Charlynn Flaherty, told Plaintiff to provide medical clearance for whichever position he wanted to be reinstated to.

22.  On January 10, 2008, Plaintiff obtained written medical clearance from his primary care physician, Dr. Jyothi Raomahadevia, to return to work in a sedentary position, that of Emergency Dispatcher. Plaintiff submitted the medical clearance, including the request for reasonable accommodation, placement in a sedentary position, to the County.

23.  Dr. Raomahadevia based his decision to clear Plaintiff for return as an Emergency Dispatcher upon the position description of the job, and his knowledge of Plaintiff's condition.

24.  Dr. Raomahadevia also noted in the letter he provided that Plaintiff was not yet physically fit for a more physically demanding, non-sedentary job, as that of

Communications Specialist, because he still experienced some weakness, fatigue, and shortness of breath.

25. After Plaintiff submitted the January 10, 2008 letter from Dr. Raomahadevia clearing him to work to Supervisor, Charlynn Flaherty, he waited for weeks, hearing no word about when he could return, despite his repeated inquiries about his status.

26. On January 16, 2007, Kathleen Colbert, Prince George's County Retirement Administrator, stated in a memo to Plaintiff's Supervisor, Charlynn Flaherty, that the Medical Advisory Board had reviewed reports from Plaintiff's physicians, and determined that Plaintiff should be given the opportunity to resume work as an Emergency Dispatcher.

27. Upon information and belief, in a second, February 8, 2008 memo from Colbert to Flaherty, the County reversed its position, stating that the Medical Advisory Board found Mr. Hook was "not fit for duty and should seek disability retirement."

28. In the February 8, 2008 memo, the employer stated that at the request of "the Department", the Medical Advisory Board had reviewed Plaintiff's medical records "for his diabetic retinopathy." The Board also alleged that they relied upon the report of Dr. Raomahadevia, "and reports previously reviewed."

29. From January 10, 2008, Plaintiff had had medical clearance from his physician to return to a sedentary position, the position of Emergency Dispatcher.

30. From January 10, 2008, Plaintiff was fully able to perform all the job functions of the sedentary position he sought, that of Emergency Dispatcher.

31. On February 19, 2008, the County wrote to Plaintiff that upon the advice of the Medical Advisory Board, the County proposed his termination, in accordance with Section 16-189(d) of the Prince George's County Personnel Law.

32. Upon information and belief, the County had made no further inquiry or assessment of Plaintiff's medical ability to perform with the accommodation he requested, placement in a sedentary position, Emergency Dispatcher.

33. Upon information and belief, the County performed no individualized assessment of Plaintiff's condition as it related to the tasks required in the position which he requested, before they decided to terminate him.

34. The County terminated Plaintiff for having a permanent impairment substantially limiting a major life function, where the County relied upon Section 16-189(d) of the Prince George's County Personnel Law. Section 16-189(d) provides for termination of an employee where such employee, as found in a medical examination, "has a permanent impairment that substantially limits a major life activity of the employee."

35. Plaintiff appealed the decision, but on March 28, 2008, Plaintiff was terminated, and advised to seek disability retirement.

36. By the end of March, 2008 Plaintiff had fully recovered; he no longer experienced any weakness, fatigue or shortness of breath; and his strength and endurance were excellent. Since that time, Plaintiff has worked out vigorously each day, and is a volunteer Deputy Fire Chief, rescuing victims from blazing buildings and automobiles, and directing life saving operations in multi-victim emergency incidents, although Plaintiff also continues to be treated as a diabetic. In retaliation for Plaintiff's opposition

to discrimination, Defendant continues to refuse to place Plaintiff in any of the openings for an Emergency Dispatcher, and refuses to place him in any of the other positions for which he has and continues to apply since his termination, although he is qualified for such positions,.

## COUNT I
### Violations of the ADA, the Maryland Code, and the HRCA

37. Plaintiff realleges as if set forth fully verbatim herein all allegations contained in Paragraphs 1-36 of this Complaint.

38. The ADA, the Maryland Code, and the HRCA prohibit discrimination in employment based on disability or handicap, including discriminatory discharge and failure to consider accommodation. Plaintiff is an "individual with a disability" under the ADA and the Maryland Code, and is an individual with a "physical or mental handicap" under the HRCA.

39. Defendant violated Plaintiff's rights under the ADA, the Maryland Code, and the HRCA when it terminated him based upon the stereotypic and false presumption that he was not fit for duty.

40. Defendant also violated Plaintiff's rights under the ADA, the Maryland Code, and the HRCA, when it refused to consider his request for reasonable accommodation, refused to conduct an individualized assessment of Plaintiff's abilities, and refused to reinstate him in a sedentary position, Emergency Dispatcher, although openings were available.

41. In addition, or in the alternative, the ADA, the Maryland Code, and the HRCA prohibit discrimination in employment against any person because he is regarded as, or has a record of being a person with a disability, or a physical or mental handicap.

42. In addition, or in the alternative, Defendant violated Plaintiff's rights when it refused to reinstate him because it falsely regarded him as having a disability, or because he had a record of being a person with a disability or physical or mental handicap.

43. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has and will continue to suffer damages, including severe economic loss, emotional distress and pain and suffering.

44. Defendant's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's rights as an individual under the ADA, the Maryland Code, and under the HRCA, where it discriminated against him as an individual with a disability or handicap, and as a person regarded as having a disability or handicap, and as a person with a record of a disability or handicap.

## COUNT II
### Retaliation under the ADA, the Maryland Code, and the HRCA

45. Plaintiff realleges as if set forth fully verbatim herein all allegations contained in Paragraphs 1-36 of this Complaint.

46. The ADA, the Maryland Code, and the HRCA prohibit retaliatory refusal to rehire, based upon the applicant's participation in opposition to discrimination based upon disability or handicap, or discrimination against persons regarded as or with a record of disability or handicap.

47. Defendant violated Plaintiff's rights under the ADA, the Maryland Code, and the HRCA when it refused, and continues to refuse to rehire him in any position whatever, despite his continuing applications for positions for which he is qualified.

48. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has and will continue to suffer damages, including severe economic loss, emotional distress and pain and suffering.

49. Defendant's conduct was and continues to be intentional, malicious, and recklessly indifferent to Plaintiff's rights as an individual under the ADA, the Maryland Code, and under the HRCA, where in retaliation it refuses to rehire him for positions for which is qualified

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A. A declaration that the Defendant's actions have violated Plaintiff's rights under the Americans with Disabilities Act; the Prince George's County Human Relations Commission Act; and the Maryland Code, Art. 49B, § 16;

B. An award of full back pay and lost benefits;

C. Reinstatement of Plaintiff in a position and salary level which the Plaintiff would have had absent Defendant's discriminatory treatment, or alternatively an award of lost front pay and benefits for the years Plaintiff would have worked absent the Defendant's discriminatory treatment;

D. An award of compensatory damages for Plaintiff's physical and emotional pain and suffering in an amount to be determined by the jury at trial;

E.  An award of punitive damages in an amount to be determined by the jury at trial;

F. An award of reasonable attorneys fees and all costs incurred in connection with this action; and

G.  Such other appropriate, additional or alternative relief as the Court determines is just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

_____/s/_____
Nancy Brewer, Esq. Bar No. 17088
Philip B. Zipin, Esq. Bar No. 03932
Gregg Greenberg, Esq. Bar No. 17291
The Zipin Law Firm
8403 Colesville Rd. S. 610
Silver Spring, Maryland 20910
(301) 587 – 9373
Alt. No.  (513) 979 – 4138
 Fax: (301) 587-9397
nbrewerwv@msn.com
pzipin@zipinlaw.com
ggreenberg@zipinlaw.com
Counsel for Plaintiff